Law Offices of
## VINCENT CASTELLANO, P.C.

The Sterling National Bank Building  
35 East Grassy Sprain Road, Suite 400  
Yonkers, New York 10710  
*Also admitted in Connecticut*

Tel: 914.779.1100 Ext. 310 Fax: 914.779.0369  
Email: vcastellano@vcsclaw.com  
OF COUNSEL TO:  
Veneruso Curto Schwartz & Curto, LLP

April 17, 2017

<u>Via Email and UPS Next Day Air</u>  
Danielle L. Radeljic, Esq.  
1594 Strawberry Road  
Mohegan Lake, New York 10547

Re: Garcia ("Seller") to Kiamie ("Purchasers")  
<u>Premises: 127 Rolling Hills Road, Thornwood, New York</u>

Dear Ms. Radeljic:

Enclosed please find two contracts of sale for the above referenced transaction, signed by the Purchasers. I have enclosed my clients' check in the sum of $99,300.00 made payable to you, as Escrowee, as and for the Downpayment.

Please arrange to have your client sign and return a fully executed contract to this office as soon as possible, together with a cover letter acknowledging receipt of the contract deposit into your escrow account. *Also make sure your client initials the correction on page ten next to my clients' initials.*

Very truly yours,

VINCENT CASTELLANO

Enc.

---

**MATTHEW KIAMIE**  
**KERI-LYNN KIAMIE**  
177 WEED AVE.  
HAWTHORNE, NY 10532

2989

April 13, 2017

Pay to the order of: Danielle L. Radeljic, Esq., P.C., as attorney    $ 99,300 —

Ninety nine thousand three hundred and 00/100 —

M&T Bank    Power Financial Solutions

Deposit: 127 Rolling Hills Rd.

2989

## RESIDENTIAL CONTRACT OF SALE

*Jointly prepared by the Real Property Section of the New York State Bar Association, the New York State Land Title Association, the Committee on Real Property Law of the Association of the Bar of the City of New York and the Committee on Real Property Law of the New York County Lawyers' Association (11/00)*

### CONSULT YOUR LAWYER BEFORE SIGNING THIS CONTRACT

**NOTE: FIRE AND CASUALTY LOSSES AND CONDEMNATION**
This contract form does not provide for what happens in the event of fire, or other casualty loss or condemnation before the title closing. Unless different provision is made in this contract, Section 5-1311 of the General Obligations Law will apply. One part of that law makes a Purchaser responsible for fire and casualty loss upon taking possession of the Premises before the title closing.

**WARNING: PLAIN LANGUAGE**
No representation is made that this form of contract for the sale and purchase of real estate complies with Section 5-702 of the General Obligations Law ("Plain Language").

### Residential Contract of Sale

Contract of Sale made as of this 17th day of April (~~March~~), 2017 between LARRY GARCIA,

Address: 127 Rolling Hills Road, Thornwood, New York 10594

Social Security Number/ Fed. I.D. No(s): [redacted] hereinafter called "**Seller**"; and

MATTHEW KIAMIE and KERI KIAMIE

Address: 177 Weed Avenue, Hawthorne, NY 10532

Social Security Number/ Fed. I.D. No(s): [redacted] hereinafter called "**Purchaser**".

The parties hereby agree as follows:

1.  **Premises.** Seller shall sell and convey and Purchaser shall purchase the property, together with all buildings and improvements thereon (collectively the "**Premises**"), more fully described on a separate page marked "Schedule A", annexed hereto and made a part hereof and also known as:

Street Address: 127 ROLLING HILLS ROAD, THORNWOOD, NEW YORK 10594

Together with Seller's ownership and rights, if any, to land lying in the bed of any street or highway, opened or proposed, adjoining the Premises to the center line thereof, including any right of Seller to any unpaid award by reason of any taking by condemnation and/or for any damage to the Premises by reason of change of grade of any street or highway. Seller shall deliver at no additional cost to Purchaser, at Closing (as hereinafter defined), or thereafter, on demand, any documents that Purchaser may reasonably require for the conveyance of such title and the assignment and collection of such award or damages.

2.  **Personal Property.** This sale also includes all fixtures and articles of personal property now attached or appurtenant to the Premises, unless specifically excluded below. Seller represents and warrants that at Closing they will be paid for and owned by Seller, free and clear of all liens and encumbrances, except any existing mortgage to which this sale may be subject. They may include, but are not limited to, plumbing, heating, lighting and cooking fixtures, chandeliers, bathroom and kitchen cabinets and counters, mantels, door mirrors, switch plates and door hardware, window treatments, shades, screens, awnings, storm windows, storm doors, window boxes, mail box, TV aerials, weather vane, flagpole, pumps,

shrubbery, fencing, outdoor statuary, tool shed, dishwasher, washing machine, clothes dryer, garbage disposal unit, range, oven, built-in microwave oven, refrigerator, freezer, air conditioning equipment and installations, wall to wall carpeting and built-ins not excluded below.

Excluded from this sale are furniture and household furnishings.

3. **Purchase Price.** The purchase price is NINE HUNDRED NINETY THREE THOUSAND and 00/100 DOLLARS ($993,000.00), payable as follows:

(a) on the signing of this contract, by Purchaser's good check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to paragraph 6 of this contract (the "**Downpayment**"):                $99,300.00

(b) ~~by allowance for the principal amount unpaid on the existing mortgage on the date hereof, payment of which Purchaser shall assume by joinder in the deed:~~                $

(c) ~~by a purchase money note and mortgage from Purchaser to Seller:~~                $

(d) balance at Closing in accordance with paragraph 7:                $893,700.00

4. ~~**Existing Mortgage.** *(Delete if inapplicable)* If this sale is subject to an existing mortgage as indicated in paragraph 3(b) above:~~

(a) ~~The Premises shall be conveyed subject to the continuing lien of the existing mortgage, which is presently payable, with interest at the rate of _____ percent per annum, in monthly installments of $_____ which include principal, interest and escrow amounts, if any, and with any balance of principal being due and payable on _____.~~

(b) ~~To the extent that any required payments are made on the existing mortgage between the date hereof and Closing which reduce the unpaid principal amount thereof below the amount shown in paragraph 3(b), then the balance of the price payable at Closing under paragraph 3(d) shall be increased by the amount of the payments of principal. Seller represents and warrants that the amount shown in paragraph 3(b) is substantially correct and agrees that only payments required by the existing mortgage will be made between the date hereof and Closing.~~

(c) ~~If there is a mortgagee escrow account, Seller shall assign it to Purchaser, if it can be assigned, and in that case Purchaser shall pay the amount in the escrow account to Seller at Closing.~~

(d) ~~Seller shall deliver to Purchaser at Closing a certificate dated not more than 30 days before Closing signed by the holder of the existing mortgage, in form for recording, certifying the amount of the unpaid principal, the date to which interest has been paid and the amounts, if any, claimed to be unpaid for principal and interest, itemizing the same. Seller shall pay the fees for recording such certificate. If the holder of the existing mortgage is a bank or other institution as defined in Section 274-a of the Real Property Law it may, instead of the certificate, furnish a letter signed by a duly authorized officer, employee or agent, dated not more than 30 days before Closing, containing the same information.~~

(e) ~~Seller represents and warrants that (i) Seller has delivered to Purchaser true and complete copies of the existing mortgage, the note secured thereby and any extensions and modifications thereof, (ii) the existing mortgage is not now, and at the time of Closing will not be, in default, and (iii) the existing mortgage does not contain any provision that permits the holder of the mortgage to require its immediate payment in full or to change any other term thereof by reason of the sale or conveyance of the Premises.~~

5. ~~**Purchase Money Mortgage.** *(Delete if inapplicable)* If there is to be a purchase money mortgage as indicated in paragraph 3(c) above:~~

-2-

(a) ~~The purchase money note and mortgage shall be drawn by the attorney for Seller in the form attached or, if not, in the standard form adopted by the New York State Land Title Association. Purchaser shall pay at Closing the mortgage recording tax, recording fees and the attorney's fees in the amount of $_____ for its preparation.~~

(b) ~~The purchase money note and mortgage shall also provide that it is subject and subordinate to the lien of the existing mortgage and any extensions, modifications, replacements or consolidations of the existing mortgage, provided that (i) the interest rate thereof shall not be greater than _____ percent per annum and the total debt service thereunder shall not be greater than $_____ per annum, and (ii) if the principal amount thereof shall exceed the amount of principal owing and unpaid on the existing mortgage at the time of placing such new mortgage or consolidated mortgage, the excess be paid to the holder of such purchase money mortgage in reduction of the principal thereof. The purchase money mortgage shall also provide that such payment to the holder thereof shall not alter or affect the regular installments, if any, of principal payable thereunder and that the holder thereof will, on demand and without charge therefor, execute, acknowledge and deliver any agreement or agreements further to effectuate such subordination.~~

6. **Downpayment in Escrow.** (a) Seller's attorney ("Escrowee") shall hold the Downpayment in escrow in a segregated bank account at M&T BANK address: 3031 EAST MAIN STREET, MOHEGAN LAKE, NY 10547 until Closing or sooner termination of this contract and shall pay over or apply the Downpayment in accordance with the terms of this paragraph. Escrowee shall hold the Downpayment in a non-interest bearing account for the benefit of the parties. If interest is held for the benefit of the parties, it shall be paid to the party entitled to the Downpayment and the party receiving the interest shall pay any income taxes thereon. If interest is not held for the benefit of the parties, the Downpayment shall be placed in an IOLA account or as otherwise permitted or required by law. The Social Security or Federal Identification numbers of the parties shall be furnished to Escrowee upon request. At Closing, the Downpayment shall be paid by Escrowee to Seller. If for any reason Closing does not occur and either party gives Notice (as defined in paragraph 25) to Escrowee demanding payment of the Downpayment, Escrowee shall give prompt Notice to the other party of such demand. If Escrowee does not receive Notice of objection from such other party to the proposed payment within 10 business days after the giving of such Notice, Escrowee is hereby authorized and directed to make such payment. If Escrowee does receive such Notice of objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by Notice from the parties to this contract or a final, nonappealable judgment, order or decree of a court. However, Escrowee shall have the right at any time to deposit the Downpayment and the interest thereon with the clerk of a court in the county in which the Premises are located and shall give Notice of such deposit to Seller and Purchaser. Upon such deposit or other disbursement in accordance with the terms of this paragraph, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee. Seller and Purchaser jointly and severally (with right of contribution) agree to defend (by attorneys selected by Escrowee), indemnify and hold Escrowee harmless from and against all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee.

(c) Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advice of such counsel.

(d) Escrowee acknowledges receipt of the Downpayment by check subject to collection and Escrowee's agreement to the provisions of this paragraph by signing in the place indicated on the signature page of this contract.

(e) Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Downpayment or any other dispute between the parties whether or not Escrowee is in possession of the Downpayment and continues to act as Escrowee.

(f) The party whose attorney is Escrowee shall be liable for loss of the Downpayment.

7.  **Acceptable Funds.** All money payable under this contract, unless otherwise specified, shall be paid by:

(a) Cash, but not over $1,000.00;

(b) Good certified check of Purchaser drawn on or official check issued by any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York, unendorsed and payable to the order of Seller, or as Seller may otherwise direct upon reasonable prior notice (by telephone or otherwise) to Purchaser;

(c) As to money other than the purchase price payable to Seller at Closing, uncertified check of Purchaser up to the amount of $500.00; and

(d) As otherwise agreed to in writing by Seller or Seller's attorney.

8.  **Mortgage Commitment Contingency.** (Delete paragraph if inapplicable)

(a) The obligation of Purchaser to purchase under this contract is conditioned upon issuance, on or before thirty (30) days after a fully executed copy of this contract is given to Purchaser or Purchaser's attorney in the manner set forth in paragraph 25 or subparagraph 8(k) (the **"Commitment Date"**), of a written commitment from an Institutional Lender pursuant to which such Institutional Lender agrees to make a first mortgage loan, other than a VA, FHA or other governmentally insured loan, to Purchaser, at Purchaser's sole cost and expense, of $893,700.00 for a term of 15 to 30 (or such shorter term as Purchaser shall be willing to accept) at the prevailing fixed or adjustable rate of interest and on other customary commitment terms (the **"Commitment"**). To the extent a Commitment is conditioned on the sale of Purchaser's current home, payment of any outstanding debt, no material adverse change in Purchaser's financial condition or any other customary conditions, Purchaser accepts the risk that such conditions may not be met; however, a commitment conditioned on the Institutional Lender's approval of an appraisal shall not be deemed a "Commitment" hereunder until an appraisal is approved (and if that does not occur before the Commitment Date, Purchaser may cancel under subparagraph 8(e) unless the Commitment Date is extended). Purchaser's obligations hereunder are conditioned only on issuance of a Commitment. Once a Commitment is issued, Purchaser is bound under this contract even if the lender fails or refuses to fund the loan for any reason.

(b) Purchaser shall (i) make prompt application to one or, at Purchaser's election, more than one Institutional Lender for such mortgage loan, (ii) furnish accurate and complete information regarding Purchaser and members of Purchaser's family, as required, (iii) pay all fees, points and charges required in connection with such application and loan, (iv) pursue such application with diligence, and (v) cooperate in good faith with such Institutional Lender(s) to obtain a Commitment. Purchaser shall accept a Commitment meeting the terms set forth in subparagraph 8(a) and shall comply with all requirements of such Commitment (or any other commitment accepted by Purchaser). Purchaser shall furnish Seller with a copy of the Commitment promptly after receipt thereof.

(c) *(Delete this subparagraph if inapplicable)* Prompt submission by Purchaser of an application to a mortgage broker registered pursuant to Article 12-D of the New York Banking Law ("**Mortgage Broker**") shall constitute full compliance with the terms and conditions set forth in subparagraph 8(b)(i), provided that such Mortgage Broker promptly submits such application to such Institutional Lender(s). Purchaser shall cooperate in good faith with such Mortgage Broker to obtain a Commitment from such Institutional Lender(s).

(d) If all Institutional Lenders to whom applications were made deny such applications in writing prior to the Commitment Date, Purchaser may cancel this contract by giving Notice thereof to Seller, with a copy of such denials, provided that Purchaser has complied with all its obligations under this paragraph 8.

(e) If no Commitment is issued by the Institutional Lender on or before the Commitment Date, then, unless Purchaser has accepted a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 8(a), Purchaser may cancel this contract by giving Notice to Seller within 5 business days after the Commitment Date, provided that such Notice includes the name and address of the Institutional Lender(s) to whom application was made and that Purchaser has complied with all its obligations under this paragraph 8.

(f) If this contract is canceled by Purchaser pursuant to subparagraphs 8(d) or (e), neither party shall thereafter have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser and except as set forth in paragraph 27.

(g) If Purchaser ~~fails to give timely Notice of cancellation or if Purchaser~~ accepts a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 8(a), then Purchaser shall be deemed to have waived Purchaser's right to cancel this contract and to receive a refund of the Downpayment by reason of the contingency contained in this paragraph 8.

(h) If Seller has not received a copy of a commitment from an Institutional Lender accepted by Purchaser by the Commitment Date, Seller may cancel this contract by giving Notice to Purchaser within 5 business days after the Commitment Date, which cancellation shall become effective unless Purchaser delivers a copy of such commitment to Seller within 10 business days after the Commitment Date. After such cancellation neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser (provided Purchaser has complied with all of its obligations under this paragraph 8) and except as set forth in paragraph 27.

(i) The attorneys for the parties are hereby authorized to give and receive on behalf of their clients all Notices and deliveries under this paragraph 8.

(j) For purposes of this contract, the term "**Institutional Lender**" shall mean any bank, savings bank, private banker, trust company, savings and loan association, credit union or similar banking institution whether organized under the laws of this state, the United States or any other state; foreign banking corporation licensed by the Superintendent of Banks of New York or regulated by the Comptroller of the Currency to transact business in New York State; insurance company duly organized or licensed to do business in New York State; mortgage banker licensed pursuant to Article 12-D of the Banking Law; and any instrumentality created by the United States or any state with the power to make mortgage loans.

(k) For purposes of subparagraph (a), Purchaser shall be deemed to have been given a fully executed copy of this contract on the third business day following the date of ordinary or regular mailing, postage prepaid.

9.     **Permitted Exceptions.** The Premises are sold and shall be conveyed subject to:

(a) Zoning and subdivision laws and regulations, and landmark, historic or wetlands designation, provided that they are not violated by the existing buildings and improvements erected on the property or their use;

(b) Consents for the erection of any structures on, under or above any streets on which the Premises abut;

(c) Encroachments of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway;

(d) Real estate taxes that are a lien, but are not yet due and payable;

(e) Easement granted to the Town of Mount Pleasant in Liber 7137 cp 426; and

(f) The other matters, if any, including a survey exception, set forth in a Rider attached.

10.  **Governmental Violations and Orders.** (a) Seller shall comply with all notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued as of the date hereof by any governmental department having authority as to lands, housing, buildings, fire, health, environmental and labor conditions affecting the Premises. The Premises shall be conveyed free of them at Closing. Seller shall furnish Purchaser with any authorizations necessary to make the searches that could disclose these matters.

(b) ~~(Delete if inapplicable) All obligations affecting the Premises pursuant to the Administrative Code of the City of New York incurred prior to Closing and payable in money shall be discharged by Seller at or prior to Closing.~~

11.  **Seller's Representations.** (a) Seller represents and warrants to Purchaser that:

(i)  The Premises abut or have a right of access to a public road;

(ii)  Seller is the sole owner of the Premises and has the full right, power and authority to sell, convey and transfer the same in accordance with the terms of this contract;

(iii)  Seller is not a "foreign person", as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (collectively **"FIRPTA"**);

(iv)  The Premises are not affected by any exemptions or abatements of taxes; and

(v)  Seller has been known by no other name for the past ten years, except NONE.

(b) Seller covenants and warrants that all of the representations and warranties set forth in this contract shall be true and correct at Closing.

(c) Except as otherwise expressly set forth in this contract, none of Seller's covenants, representations, warranties or other obligations contained in this contract shall survive Closing.

12.  **Condition of Property.** Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises and of all other property included in this sale, based on Purchaser's own inspection and investigation thereof, and that Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical condition, state of repair, use, cost of

- 6 -

operation or any other matter related to the Premises or the other property included in the sale, given or made by Seller or its representatives, and shall accept the same "as is" in their present condition and state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of Closing (except as otherwise set forth in paragraph 16(e)), without any reduction in the purchase price or claim of any kind for any change in such condition by reason thereof subsequent to the date of this contract. Purchaser and its authorized representatives shall have the right, at reasonable times and upon reasonable notice (by telephone or otherwise) to Seller, to inspect the Premises before Closing.

13.    **Insurable Title.** Seller shall give and Purchaser shall accept such title as a duly licensed title insurance company licensed to do business in New York State shall be willing to approve and insure in accordance with its standard form of title policy approved by the New York State Insurance Department, subject only to the matters provided for in this contract.

14.    **Closing, Deed and Title.** (a) "Closing" means the settlement of the obligations of Seller and Purchaser to each other under this contract, including the payment of the purchase price to Seller, and the delivery to Purchaser of a bargain and sale deed with covenants against grantor's acts in proper statutory short form for record, duly executed and acknowledged, so as to convey to Purchaser fee simple title to the Premises, free of all encumbrances, except as otherwise herein stated. The deed shall contain a covenant by Seller as required by subd. 5 of Section 13 of the Lien Law.

(b) If Seller is a corporation, it shall deliver to Purchaser at the time of Closing (i) a resolution of its Board of Directors authorizing the sale and delivery of the deed, and (ii) a certificate by the Secretary or Assistant Secretary of the corporation certifying such resolution and setting forth facts showing that the transfer is in conformity with the requirements of Section 909 of the Business Corporation Law. The deed in such case shall contain a recital sufficient to establish compliance with that Section.

15.    **Closing Date and Place.** Closing shall take place at the office of VINCENT CASTELLANO, ESQ., located at 35 E. Grassy Sprain Road, Yonkers, NY 10710 (or, upon prior notice, at the office of Purchaser's lender) at 10 o'clock in the forenoon on or about THE DATE THAT IS SIXTY (60) DAYS FROM THE DATE OF THIS CONTRACT OF SALE, SUBJECT TO ENTRY OF AN ORDER OF THE BANKRUPTCY COURT APPROVING THIS CONTRACT OF SALE PURSUANT TO A SALE MOTION OR THE CONFIRMATION OF A PLAN THAT IS FILED BY THE SELLER WITH THE BANKRUPTCY COURT.  NOTWITHSTANDING THE FOREGOING, THE PARTIES SHALL ENDEAVOR TO CLOSE AS SOON AS PRACTICABLE FOLLOWING ENTRY OF AN ORDER OF THE BANKRUPTCY COURT, BUT IN NO EVENT LATER THAN THIRTY (30) DAYS FOLLOWING THE ENTRY OF SUCH ORDER. If the closing is held outside Westchester County, Purchaser shall pay the sum of $250.00 to Danielle L. Radeljic, Esq., as reasonable travel time and fees. ~~or, upon reasonable notice (by telephone or otherwise) by Purchaser, at the office of~~ _____

16.    **Conditions to Closing.** This contract and Purchaser's obligation to purchase the Premises are also subject to and conditioned upon the fulfillment of the following conditions precedent:

(a) The accuracy, as of the date of Closing, of the representations and warranties of Seller made in this contract.

(b) The delivery by Seller to Purchaser of a valid and subsisting Certificate of Occupancy or other required certificate of compliance, or evidence that none was required, covering the building(s) and all of the other improvements located on the property authorizing their use as a single family dwelling at the date of Closing.

(c) The delivery by Seller to Purchaser of a certificate stating that Seller is not a foreign person, which certificate shall be in the form then required by FIRPTA or a withholding certificate from the Internal Revenue Service. If Seller fails to deliver the aforesaid certificate or if Purchaser is not entitled under FIRPTA to rely on such certificate, Purchaser shall deduct and withhold from the purchase price a

- 7 -

sum equal to 10% thereof (or any lesser amount permitted by law) and shall at Closing remit the withheld amount with the required forms to the Internal Revenue Service.

(d) The delivery of the Premises and all building(s) and improvements comprising a part thereof in broom clean condition, vacant and free of leases or tenancies, together with keys to the Premises.

(e) All plumbing (including water supply and septic systems, if any), heating and air conditioning, if any, electrical and mechanical systems, equipment and machinery in the building(s) located on the property and all appliances which are included in this sale being in working order as of the date of Closing.

(f) If the Premises are a one or two family house, delivery by the parties at Closing of affidavits in compliance with state and local law requirements to the effect that there is installed in the Premises a smoke detecting alarm device or devices.

(g) The delivery by the parties of any other affidavits required as a condition of recording the deed.

17. **Deed Transfer and Recording Taxes.** At Closing, certified or official bank checks payable to the order of the appropriate State, City or County officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or recording of the deed or mortgage, if any, shall be delivered by the party required by law or by this contract to pay such transfer and/or recording tax, together with any required tax returns duly executed and sworn to, and such party shall cause any such checks and returns to be delivered to the appropriate officer promptly after Closing. The obligation to pay any additional tax or deficiency and any interest or penalties thereon shall survive Closing.

18. **Apportionments and Other Adjustments; Water Meter and Installment Assessments.** (a) To the extent applicable, the following shall be apportioned as of midnight of the day before the day of Closing: (i) taxes, water charges and sewer rents, on the basis of the fiscal period for which assessed; (ii) fuel; (iii) interest on the existing mortgage; (iv) premiums on existing transferable insurance policies and renewals of those expiring prior to Closing; (v) vault charges; (vi) rents as and when collected.

(b) If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the tax rate for the immediately preceding fiscal period applied to the latest assessed valuation.

(c) If there is a water meter on the Premises, Seller shall furnish a reading to a date not more than 30 days before Closing and the unfixed meter charge and sewer rent, if any, shall be apportioned on the basis of such last reading.

(d) If at the date of Closing the Premises are affected by an assessment which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this contract all the unpaid installments shall be considered due and shall be paid by Seller at or prior to Closing.

(e) Any errors or omissions in computing apportionments or other adjustments at Closing shall be corrected within a reasonable time following Closing. This subparagraph shall survive Closing.

19. **Allowance for Unpaid Taxes, etc.** Seller has the option to credit Purchaser as an adjustment to the purchase price with the amount of any unpaid taxes, assessments, water charges and sewer rents, together with any interest and penalties thereon to a date not less than five business days after Closing, provided that official bills therefor computed to said date are produced at Closing.

20. **Use of Purchase Price to Remove Encumbrances.** If at Closing there are other liens or encumbrances that Seller is obligated to pay or discharge, Seller may use any portion of the cash balance of

- 8 -

the purchase price to pay or discharge them, provided Seller shall simultaneously deliver to Purchaser at Closing instruments in recordable form and sufficient to satisfy such liens or encumbrances of record, together with the cost of recording or filing said instruments. As an alternative Seller may deposit sufficient monies with the title insurance company employed by Purchaser acceptable to and required by it to assure their discharge, but only if the title insurance company will insure Purchaser's title clear of the matters or insure against their enforcement out of the Premises and will insure Purchaser's Institutional Lender clear of such matters. Upon reasonable prior notice (by telephone or otherwise), Purchaser shall provide separate certified or official bank checks as requested to assist in clearing up these matters.

21.  **Title Examination; Seller's Inability to Convey; Limitations of Liability.** (a) Purchaser shall order an examination of title in respect of the Premises from a title company licensed or authorized to issue title insurance by the New York State Insurance Department or any agent for such title company promptly after the execution of this contract or, if this contract is subject to the mortgage contingency set forth in paragraph 8, after a mortgage commitment has been accepted by Purchaser. Purchaser shall cause a copy of the title report and of any additions thereto to be delivered to the attorney(s) for Seller promptly after receipt thereof.

(b) (i) If at the date of Closing Seller is unable to transfer title to Purchaser in accordance with this contract, or Purchaser has other valid grounds for refusing to close, whether by reason of liens, encumbrances or other objections to title or otherwise (herein collectively called **"Defects"**), other than those subject to which Purchaser is obligated to accept title hereunder or which Purchaser may have waived and other than those which Seller has herein expressly agreed to remove, remedy or discharge and if Purchaser shall be unwilling to waive the same and to close title without abatement of the purchase price, then, except as hereinafter set forth, Seller shall have the right, at Seller's sole election, either to take such action as Seller may deem advisable to remove, remedy, discharge or comply with such Defects or to cancel this contract; (ii) if Seller elects to take action to remove, remedy or comply with such Defects, Seller shall be entitled from time to time, upon Notice to Purchaser, to adjourn the date for Closing hereunder for a period or periods not exceeding 60 days in the aggregate (but not extending beyond the date upon which Purchaser's mortgage commitment, if any, shall expire), and the date for Closing shall be adjourned to a date specified by Seller not beyond such period. If for any reason whatsoever, Seller shall not have succeeded in removing, remedying or complying with such Defects at the expiration of such adjournment(s), and if Purchaser shall still be unwilling to waive the same and to close title without abatement of the purchase price, then either party may cancel this contract by Notice to the other given within 10 days after such adjourned date; (iii) notwithstanding the foregoing, the existing mortgage (unless this sale is subject to the same) and any matter created by Seller after the date hereof shall be released, discharged or otherwise cured by Seller at or prior to Closing.

(c) If this contract is cancelled pursuant to its terms, other than as a result of Purchaser's default, this contract shall terminate and come to an end, and neither party shall have any further rights, obligations or liabilities against or to the other hereunder or otherwise, except that: (i) Seller shall promptly refund or cause the Escrowee to refund the Downpayment to Purchaser and, unless cancelled as a result of Purchaser's default or pursuant to paragraph 8, to reimburse Purchaser for the net cost of examination of title, including any appropriate additional charges related thereto, and the net cost, if actually paid or incurred by Purchaser, for updating the existing survey of the Premises or of a new survey, and (ii) the obligations under paragraph 27 shall survive the termination of this contract.

22.  **Affidavit as to Judgments, Bankruptcies, etc.** If a title examination discloses judgments, bankruptcies or other returns against persons having names the same as or similar to that of Seller, Seller shall deliver an affidavit at Closing showing that they are not against Seller.

23.  **Defaults and Remedies.** (a) If Purchaser defaults hereunder, Seller's sole remedy shall be to receive and retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

-9-

(b) If Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including, but not limited to, specific performance.

24. **Purchaser's Lien.** All money paid on account of this contract, and the reasonable expenses of examination of title to the Premises and of any survey and survey inspection charges, are hereby made liens on the Premises, but such liens shall not continue after default by Purchaser under this contract.

25. **Notices.** Any notice or other communication ("Notice") shall be in writing and either

(a) sent by either of the parties hereto or by their respective attorneys who are hereby authorized to do so on their behalf or by the Escrowee, by registered or certified mail, postage prepaid, or

(b) delivered in person or by overnight courier, with receipt acknowledged, to the respective addresses given in this contract for the party and the Escrowee, to whom the Notice is to be given, or to such other address as such party or Escrowee shall hereafter designate by Notice given to the other party or parties and the Escrowee pursuant to this paragraph. Each Notice mailed shall be deemed given on the third business day following the date of mailing the same, except that any notice to Escrowee shall be deemed given only upon receipt by Escrowee and each Notice delivered in person or by overnight courier shall be deemed given when delivered, or

(c) with respect to paragraph 7(b) or 20, sent by fax to the party's attorney. Each notice by fax shall be deemed given when transmission is confirmed by the sender's fax machine. A copy of each notice sent to a party shall also be sent to the party's attorney. The attorneys for the parties are hereby authorized to give and receive on behalf of their clients all Notices and deliveries.

26. **No Assignment.** This contract may not be assigned by Purchaser without the prior written consent of Seller in each instance and any purported assignment(s) made without such consent shall be void.

27. **Broker.** Seller and Purchaser each represents and warrants to the other that it has not dealt with any real estate broker in connection with this sale other than BETTER HOMES AND GARDENS REAL ESTATE / RAND REALTY and JULIA B. FEE SOTHEY'S INT. REALTY ("**Brokers**") and Seller shall pay to BETTER HOMES AND GARDEN REAL ESTATE / RAND REALTY and any commission earned pursuant to a separate agreement between Seller and BETTER HOMES ND GARDENS REAL ESTATE / RAND REALTY and Purchaser shall pay to JULIA B. FEE SOTHEY'S INT. REALTY any commission earned in the amount of ~~one fifth (1/5tho%)~~ [handwritten: One and a half (1.5%)] percent of the Purchase Price. Seller and Purchaser shall indemnify and defend each other against any costs, claims and expenses, including reasonable attorneys' fees, arising out of the breach on their respective parts of any representation or agreement contained in this paragraph. The provisions of this paragraph shall survive Closing or, if Closing does not occur, the termination of this contract.

28. **Miscellaneous.** (a) All prior understandings, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.

(b) Neither this contract nor any provision thereof may be waived, changed or cancelled except in writing. This contract shall also apply to and bind the heirs, distributes, legal representatives, successors and permitted assigns of the respective parties. The parties hereby authorize their respective attorneys to agree in writing to any changes in dates and time periods provided for in this contract.

(c) Any singular word or term herein shall also be read as in the plural and the neuter shall include the masculine and feminine gender, whenever the sense of this contract may require it.

(d) The captions in this contract are for convenience of reference only and in no way define, limit or describe the scope of this contract and shall not be considered in the interpretation of this contract or any provision hereof.

(e) This contract shall not be binding or effective until duly executed and delivered by Seller and Purchaser.

(f) Seller and Purchaser shall comply with IRC reporting requirements, if applicable. This subparagraph shall survive Closing.

(g) Each party shall, at any time and from time to time, execute, acknowledge where appropriate and deliver such further instruments and documents and take such other action as may be reasonably requested by the other in order to carry out the intent and purpose of this contract. This subparagraph shall survive Closing.

(h) This contract is intended for the exclusive benefit of the parties hereto and, except as otherwise expressly provided herein, shall not be for the benefit of, and shall not create any rights in, or be enforceable by, any other person or entity.

(i) If applicable, the complete and fully executed disclosure of information on lead-based paint and/or lead-based paint hazards is attached hereto and made a part hereof.

29.   *SEE RIDER ATTACHED HERETO AND MADE A PART HEREOF.*

IN WITNESS WHEREOF, this contract has been duly executed by the parties hereto.

_____         _____
LARRY GARCIA, Seller                                     MATTHEW KIAMIE, Purchaser

_____         _____
Social Security No./Fed. I.D. No.                      Social Security No./Fed. I.D. No.

                                                                        _____
                                                                        KERI KIAMIE, Purchaser

                                                                        _____
                                                                        Social Security No./Fed. I.D. No.

Attorney for Seller:                                          Attorney for Purchaser:

DANIELLE L. RADELJIC, ESQ., P.C.              VINCENT CASTELLANO, ESQ.
Danielle L. Radeljic, Esq.                              35 E. Grassy Sprain Road
1594 Strawberry Road                                  Yonkers, NY 10710
Mohegan Lake, NY 10547

Email: danielle@radeljiclaw.com                Email: vcastellano@vcslaw.com
Phone: 914.589.0029                                  Phone: 914-779-1100

Receipt of the Downpayment is acknowledged and the undersigned agrees to act in accordance with the provisions of paragraph 6 above.

_____
Escrowee

**PREMISES:**

Section: 1127
Block: 1
Lot: 68
County or Town: Mt. Pleasant
Street No. Address: 127 Rolling Hills Road, Thornwood, NY

### RIDER ATTACHED TO AND MADE A PART OF CONTRACT OF SALE

Premises: 127 Rolling Hills Road, Thornwood, NY
Dated: April 17, 2017
Between: Larry Garcia (Seller)
And: Matthew Kiamie and Keri Kiamie (Purchasers)

THIS RIDER IS INTENDED TO BE AFFIXED AND BECOME PART OF THE ABOVE DESCRIBED CONTRACT AND WHEN ANY OF THE PROVISIONS OF THIS RIDER CONFLICT WITH OR ARE INCONSISTENT WITH ANY PROVISIONS OF THE CONTRACT, THEN THE PROVISIONS OF THIS RIDER SHALL CONTROL.

SAID PREMISES are sold and shall be conveyed and taken subject to the following additional provisions:

1. The parties herein recognize and understand that this is an "AS IS" sale. Purchasers have examined the Premises or have waived such examination and are familiar with the physical conditions thereof. Seller makes no other representations or warranties as to the condition of the subject Premises or any of the fixtures or articles of personal property, if any, included in the sale other than those herein set forth.

2. Seller represents that the Premises will be delivered to Purchasers in a vacant and broom clean condition as of the date of closing. Purchasers shall have the right to inspect the Premises within 48 hours prior to closing. This clause shall not survive delivery of the deed.

3. The Purchasers agree to deliver to the attorneys for the Seller herein as soon as same are available and at least fifteen (15) days prior to closing of title a list of objections and violations which may appear on such title examination, and any tax search, departmental searches, survey and survey reading, that the Purchasers may obtain, and if any objections appear on said title examination, Seller shall be given a reasonable opportunity to correct the same, or in lieu thereof, Seller may cancel this contract by refunding the Downpayment unless Purchasers are willing to accept the Premises subject to such violations.

4. If at the time prior to delivery of the deed, the Premises are affected by an assessment which is or may become payable in fixed annual installments of which the first installment is then a charge or lien, or has been paid, then for the purposes of this contract all of the unpaid installments of any such assessment including those which are to become due and payable after the delivery of the deed, shall be adjusted in the same manner as taxes are adjusted as of the closing date herein. Seller shall not be required to pay any assessment otherwise. Seller is unaware of any such special assessment at the time of this contract.

5. This contract is subject to covenants, easements and restrictions of record, if any, not violated by existing structures and uses, provided same do not: (a) contain any outstanding options or repurchase rights; (b) require any affirmative acts or monetary payments on the part of the owner of the subject

- 12 -

Premises; (c) interfere with the use of the Premises for residential purposes; and (d) have not expired or become ineffective as a result of their term or application of law.

6. In the event the Seller shall be unable to convey title in accordance with the terms and provisions of this contract, with a reasonable adjournment to the Seller to remedy any and all defects, then the Seller shall return to Purchasers all monies paid on account of the purchase price, together with the reasonable cost of title examination which shall not exceed the net charges of title companies in the County where the Premises are located, and thereupon this contract shall be deemed terminated, cancelled and abrogated and both parties shall be relieved and released from any and all liability to each other. Seller shall not be required to bring any action or proceeding or otherwise incur any expenses to render the title to the Premises marketable. Purchasers may, nevertheless, accept such title, as Seller may be able to convey without reduction of the purchase price or any credit allowance against the same, and without any other liability on the part of Seller. In the event Purchasers are unwilling to accept such title as Seller may be able to convey without reduction of the same, and without any other liability on the part of Seller, then in that event, either Purchaser or Seller shall have the right to cancel this contract in writing and Seller's sole liability shall be as outlined in the form contract herein.

7. Seller shall have the privilege of adjourning the closing of title for a period not exceeding sixty (60) days for the purpose of either perfecting title and rendering same marketable or fulfilling any of the terms, covenants and conditions on the Seller's part to be performed, which Seller has been unable to fulfill by the original date provided herein for the closing of title. However, such adjournment by Seller shall not increase the obligations in the event that said title remains unmarketable after the expiration of the period of the adjournment.

8. The acceptance of the deed by Purchasers shall be deemed full performance and discharge of all terms, conditions and agreements made herein and no liability on the part of Seller shall survive the delivery of the deed, except those terms and conditions, which by the terms of the contract expressly survive the delivery of the deed.

9. Notwithstanding anything to the contrary contained herein, Seller and Purchasers each acknowledge that this Contract and the sale of the Premises are subject to and conditioned upon Bankruptcy Court approval. The Purchasers agree to reasonably cooperate with Seller, at no expense to Purchasers, in seeking such approval. In the event this Contract and the sale of the Premises is not approved by the Bankruptcy Court, Seller's only obligation shall be to promptly refund or cause the Escrowee to refund the Downpayment to Purchaser, and thereupon this contract shall be deemed terminated, cancelled and abrogated and both parties shall be relieved and released from any and all liability to each other.

10. This contract as written contains all of the terms, conditions and agreements entered into between the parties and this contract may not be assigned, sold or transferred in whole or in part by Purchasers and any assignment, sale or transfer by Purchasers of any or all of their rights and obligations hereunder without the written consent of Seller shall be null and void and of no force and effect.

11. This contract shall not be binding upon either party unless and until fully executed by both Purchasers and Seller and delivered by Seller's attorney to Purchasers' attorney.

12. The parties agree that the terms of this contract have been thoroughly explained and discussed to them by their attorneys and they consider this contract to be written in a clear and coherent manner using words with everyday meanings and to be in plain English. The parties agree to the terms of this contract with full knowledge of its contents and understanding of this provision.

13. The risk of loss shall remain with Seller until the closing of title. The risk of damage to the Premises by fire or other casualty is assumed by Seller until the Closing, but without any obligation to repair any such damage. If Seller elects to repair such damage, Seller shall be entitled to reasonable adjournments to perform the repairs. If Seller does not elect to repair the damage within thirty (30) days after the fire or casualty, Purchasers shall have the option of: (i) canceling this contract, in which event Seller shall direct Escrow Agent to refund to Purchaser without interest all payments made by him on account of the purchase

- 13 -

price, whereupon this contract shall terminate and neither party shall have any further claim against the other; or (ii) closing title and paying the purchase price in full, without any abatement thereof or claim against Seller for such damage, and accepting an assignment of Seller's rights, if any, under any applicable hazard insurance policies, together with any payments made to him thereunder not expended to repair such damage. If the cost of repairing the damage is less than $50,000.00, Purchasers shall close title in accordance with clause (ii) above. This Paragraph 13 shall govern to the extent inconsistent with Section 5-1311 of the General Obligations Law.

14. In the event of a willful default upon the part of the Purchasers, the Seller shall retain all sums paid on account of this contract as liquidated damages and thereupon this contract shall become null and void and all further liability of either party to the other shall cease.

15. ~~If closing of title shall not take place by the date set forth in Paragraph 7 hereof (or by any agreed upon adjourned closing date), and escrowee shall not prior to such date have distributed the Downpayment pursuant to the terms of this contract, then escrowee shall have the right, at its option, to pay the sum held in escrow into court pursuant to relevant statute and commence an action or proceeding, including but not limited to an action in interpleader, in order to obtain a judicial determination as to the party legally entitled to receive funds. Purchaser and Seller jointly and severally agree to reimburse escrowee for her reasonable costs and expenses, including attorneys fees (either paid to retained attorneys or representing the fair value of legal services rendered by the escrowee to herself) incurred as a result of any dispute or litigation concerning the right to the escrow fund. Escrowee shall not be liable for any error of judgment or for any act done or step taken or omitted by her in good faith or for any mistake of fact or law, except its own gross negligence or willful misconduct.~~

16. The parties agree that neither this Contract nor any memorandum or notice thereof shall be recorded or tendered for recording in the Westchester County Register's office or in any other land record office relating to the Premises.

17. Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. A risk assessment or inspection for prior lead-based pain hazards is recommended prior to purchase.

18. The provisions of Paragraph 9 of the Contract form are hereby amended by the addition of the following: State of facts shown on a certain survey (the "Survey") of the Premises prepared by THOMAS C. MERRITTS LAND SURVEYORS, P.C., surveyed on June 9, 2016, with map prepared on June 21, 2016, and any additional state of facts as would be disclosed by a current, accurate survey of the Premises provided none of said additional state of facts (i) would render title uninsurable; (ii) indicate the existence of any encroachments on the Premises; (iii) indicate any possible rights of others, including without limitation by reason of specification, any governmental entity, to use or acquire any portion of the Premises; and (iv) indicate that all or any part of any improvement used in connection with the Premises is situated outside of the line of record to the Premises.

19. Without limitation of any other provision of this Contract, Seller hereby agrees that between the date hereof and the date of Closing hereunder he will maintain the Premises in substantially the same manner as at present, subject only to reasonable use, wear, tear and natural deterioration.

20. In the event Purchasers' Downpayment shall fail to be honored for any reason by the bank, this contract shall be void at the option of Seller.

21. Seller is not going to deliver a disclosure statement and will give Purchasers a credit at closing in the amount of $500.00

22. This transaction shall not be conditioned upon Purchasers selling any property, real or otherwise, which they may own.

23. The parties agree that this contract may be executed by facsimile or electronic mail and in each case having the same force and effect as the original. This contract may be executed in any number of counterparts and each such counterpart, for all such purposes, shall be deemed an original and all such counterparts shall together constitute one and the same instrument.

24. The Premises is sold subject to the following:

    a. All present and future building, zoning, subdivision, landmark, historic, wetlands, fire and safety restrictions, regulations, laws, ordinances, resolutions and orders of any State, municipal or other governmental authorities having jurisdiction over the Premises or the use or improvement thereof. This sale includes all rights of Seller to challenge the existence or application of the foregoing.

    b. Any recorded covenants, restrictions, easements and agreements provided they are not now violated, do not contain a clause under which the Premises would be forfeited if they were violated, and do not materially restrict the normal use and enjoyment of the Premises.

    c. The rights of utility companies, if any, to install, maintain and operate lines, poles, pipes, distribution boxes, and other equipment and installations over, under or along the street next to the Premises or the part of the Premises next to the street, or running to improvements on the Premises.

    d. Real estate taxes and water and sewer charges, subject to adjustment.

    e. Any estate taxes, inheritance taxes and other taxes owed by any party in the chain of title, provided the title company will insure against collection from the Premises or Seller agrees to satisfy the same within ninety days after the Closing and deposits with his attorneys or the title company a sum sufficient to pay such taxes or to release the Premises from the lien thereof.

    f. Encroachments and projections of walls, foundations, trim, fences or other improvements, installations or appurtenances onto the Premises or from the Premises onto adjoining property; variations between record lines and any tax map; and consents for the erection and maintenance of any structures on, under or above any streets or roads adjoining the Premises.

IN WITNESS WHEREOF, this contract has been duly executed by the parties hereto.

_____  
LARRY GARCIA, Seller

[redacted]  
Social Security No./Fed. I.D. No.

_____  
MATTHEW KIAMIE, Purchaser

[redacted]  
Social Security No./Fed. I.D. No.

_____  
KERI KIAMIE, Purchaser

[redacted]  
Social Security No./Fed. I.D. No.

- 15 -

**PURCHASERS' RIDER TO CONTRACT OF SALE BETWEEN
LARRY GARCIA ("SELLER") AND
MATTHEW KIAMIE AND KERI KIAMIE ("PURCHASERS")**

Premises:   127 Rolling Hills Road
            Thornwood, New York 10594

R1.   In the event of any inconsistencies between this rider and the pre-printed form of the contract or any other rider, the provisions of this rider shall govern and be binding.

R2.   Seller further represents the following to Purchasers:

(a)   that no construction or improvement has been effectuated by Seller upon any portion of the premises in derogation of state of local laws, rules and/or ordinances and that any and all building permits and/or certificate of occupancy amendments, as may be required with respect to the premises have been validly issued or will be at the time of closing;

(b)   that the roof shall be free of leaks and basement will be free of standing water at closing;

(c)   intentionally omitted;

(d)   that no part of the Premises are located in a wetlands protected area or flood zone;

(e)   that Seller has no knowledge of, nor have they taken part in, the dumping of any toxic, noxious or poisonous materials at the subject property; and

(f)   that there are no underground fuel tanks at the Premises

R3.   In addition to the right of inspection of the Premises within 24 hours of closing, Purchasers and/or Purchasers' agents/contractors shall be given access to the Premises on at least two or more occasions prior to closing at reasonable times and upon reasonable notice.

_____
LARRY GARCIA, Seller

_____
MATTHEW KIAMIE, Purchaser

_____
KERI KIAMIE, Purchaser